## Weaver v. Dallmeyer

*George C. Werner,* for plaintiffs.
*L. C. Heim* and *Debra C. Costlow,* for defendants.

ERB, *J.,* October 16, 1987—The matter is before the court on plaintiffs' motion for a preliminary injunction.

The individual plaintiffs are residents of Starview Countryside Community Mobile Home Park. (Starview) in East Manchester Township, York County, Pa. Cable Investments offers a cable television system in East Manchester Township. Cable Investments has a franchise granted to it by the governing body of East Manchester Township. They have been providing services to residents of Starview since 1973.

Defendant, Craig Dallmeyer, is an adult individual currently doing business as Starview Countryside Community Mobile Home Park. Defendant Dallmeyer leases land to owners of the mobile homes. Provision of services as far as the cable television programming is concerned is governed by applicable state law, and by a contract between the parties. The contract provision provided that the agreement may be terminated upon 60-days notice.

In April 1986, Cable Investments Inc. learned that MGM Satellitevision Inc., which is in the business of operating cable television systems, had contracted with Dallmeyer to provide cable television programming to Starview. On May 27, 1986, Cable Investments received written notice from Dallmeyer that the contract between the parties was terminated, effective 60 days from receipt of notice. Plaintiffs, who desire the current cable television operation of Cable Investments, now seek to have this court issue a preliminary injunction not allowing Dallmeyer to contract with another cable television system.

The controlling law to resolve the dispute in the present case is section 250.554 of the Landlord and Tenant Act provides in full:

"The tenant shall have a right to invite to his apartment or dwelling unit such employees, business visitors, tradesmen, deliverymen, suppliers of goods and services, and the like as he wishes *so long as his obligations as a tenant under this article are observed.* The tenant also shall have right to invite to his apartment or dwelling unit, for a reasonable period of time, such a social guest, family or visitors as he wishes so long as his obligations as a tenant under this article are observed. These rights may not be waived by an provisions of a written rental agreement and the landlord and/or owner may not charge any fee, service charge or additional rent to the tenant for exercising his rights under this act." (emphasis ours)

Section 250.553 of the Landlord and Tenants Act specifically states those obligations, which include the following:

"1. The tenant shall not permit any person on the premises with his permission to willfully or wantonly destroy, deface, damage, impair, or remove any part of the structure or dwelling unit, or the facilities, equipment, or appurtenances thereto or used in common, nor do any such thing."

The above two sections can be applied directly to the present case. First, plaintiff has the right to invite such service from Cable Investment Inc. onto the landlord's land only if his obligations as a tenant under the Landlord Tenant Act are observed. Clearly, plaintiffs violated section 250.553 by demanding, without the consent of the landlord, that Cable Investment Inc. remain on the landlord's property impairing the facilities thereon. Plaintiffs can not go so far as to choose services that take the

private property, such as the facilities or equipment of the owners to its impairment or detriment. Plaintiffs can not take or permit another person to take the owners private property for the tenant's or the third party's own occupation and use in the delivery and receipt of services. In summary, the Landlord Tenant Act does not authorize a tenant to select services where the provision of such necessarily compels a permanent physical occupation of the landlord's private property. If the tenant is authorized by statute to permit a third party, over the property owner's objections, to take private property without just compensation to the owner, the tenant as well as that third party, is violating the property owner's Fifth and Fourteenth Amendment rights. *Loretto v. Teleprompter Manhattan CATV Corporation,* 458 U.S. 419 (1982).

In a recent case, which dealt with the same issues as in the present case, three contentions were raised by the franchised cable operator who sought to continue its access to private property to provide cable television services to tenants on the ground. *The T-C Harrisburg Company and the T-C Harrisburg East Company v. Sammons Communications of Pennsylvania and Sammons Communications Inc.,* no. 3670 S 1984 (C. P. Dauphin County, July 6, 1978). Following the *Sammons* court, we agree that section 250.554 of the Landlord Tenant Act does not grant mandatory access rights to franchised cable operators even to serve tenants who desire the programming. Secondly, we agree that a common law tenant does not have rights in the cable fixtures sufficient to compel continued access by the franchised cable operator. Cable television is not essential to the use and enjoyment of the premises. Finally, we agree that there was no irrevocable license to remain on the premises in perpetuity. The

present case is similar to *Sammons,* in that there was no indication by the property owner by word or deed that the license would continue forever. In fact, the license was revocable with a 60-days notice.

Based on the legislative interpretation that section 250.554 of the Landlord and Tenant Act does not confer eminent domain powers upon the tenants, and does not authorize a tenant to select services where the provision of such compels a taking without just compensation and the holding in the *Sammons* case, the court will deny plaintiffs' motion for a preliminary injunction.

Accordingly, we enter the following order.

## ORDER

And now, this October 16, 1987, plaintiffs' motion for a preliminary injunction is hereby refused and denied.